IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| GERALD DEAN SKELTON, | ) | |
| | ) | |
| Petitioner, | ) | Civil No. 05-588-JO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| JEAN HILL, | ) | |
| | ) | |
| Respondent. | ) | |

Mark B. Weintraub
OFFICE OF THE FEDERAL PUBLIC DEFENDER
151 West Seventh Avenue, Suite 510
Eugene, OR  97401

   Attorney for Petitioner

Lester R. Huntsinger
State of Oregon
DEPARTMENT OF JUSTICE
1162 Court Street, N.E.
Salem, OR  97301-4096

   Attorney for Respondent

JONES, Judge:

Petitioner, an inmate at the Snake River Correctional Institution located in Ontario, Oregon, brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for Manslaughter and Assault on the basis of ineffective assistance of counsel, in violation of his rights under the Sixth and Fourteenth Amendments. For the reasons set forth  below, the Petition for Writ of Habeas Corpus (#3) is DENIED.

## BACKGROUND

On September 2, 1995, petitioner stopped at the home of Ashley Owen on his way to a festival outside Lakeview, Oregon. (Pet'r Mem. in Supp. of Pet. for Writ of Habeas Corpus (#43) at 2.)  While at Ms. Owen's residence, petitioner drank three beers.  He later returned to Ms. Owen's home after the festival, visibly intoxicated.  Ms. Owen and her friends were so concerned about his driving that they tried unsuccessfully to lock the door and take his keys.  After petitioner left, Ms. Owen telephoned 911.  In his pickup truck, petitioner traveled westbound on Oregon Highway 140, in a rural area of Klamath County between Bly and Sprague River.

At the same time, seven motorcycles, led by a pace-car, were traveling eastbound on the same stretch of Highway 140, when they collided with petitioner's vehicle.  Three of the motorcyclists were killed, and a fourth had his left leg amputated and lost a finger.  An issue at trial was whether petitioner, any of the motorcyclists, or both, crossed the center line at the time of the collision.  Both the civilian witnesses and the expert reconstructionists placed petitioner's truck over the center line at the time of the collision. (Pet'r Mem. in Supp. at 3.)

The defense attempted to offer Tom Fries, a consulting mechanical engineer, to testify that the collision never would have occurred if one of the motorcyclists had not also crossed the

2 - OPINION AND ORDER

center line.  However, the trial court ruled the testimony irrelevant pursuant to the Oregon Rules

of Evidence and did not permit Mr. Fries to testify.  Additionally, trial counsel tried to introduce

testimony of two motorists who were traveling on Highway 140 that evening in order to show

that the motorcyclists had been driving recklessly minutes before the collision.  The trial court

excluded the testimony as irrelevant and confusing pursuant to the Oregon Rules of Evidence.

Finally, the state introduced evidence that shortly after the accident, petitioner's blood alcohol

was .23 percent by weight. (Pet'r Mem. in Supp. at 4.)   No evidence was offered as to the blood

alcohol of any of the motorcyclists.

Petitioner was convicted of three counts of Manslaughter in the First Degree and one

count of Assault in the Second Degree.  Petitioner was sentenced to 540 months in prison.  (Pet'r

Mem. in Supp. at 1.)  On direct appeal, petitioner challenged both the convictions and the

sentences.  (Resp. to Habeas Corpus Pet. (#18) at 2.)  The Oregon Court of Appeals affirmed the

convictions but remanded for resentencing in a written opinion, State v. Skelton, 153 Or.App.

580, 957 P.2d 585 (1998).  Review was denied by the Oregon Supreme Court.  State v. Skelton,

327 Or. 448, 964 P.2d 1030 (1998).  On remand, petitioner was resentenced to 430 months'

imprisonment.[1]  After resentencing, petitioner filed a direct appeal, but then voluntarily

dismissed the appeal.

Petitioner then filed a formal petition for post-conviction relief in Malheur County, but

relief was denied.  (Resp't Ex. to Answer (#20) at Ex.125-127).  The Oregon Court of Appeals

affirmed without opinion, and the Oregon Supreme Court denied review.  (Resp. to Habeas Pet.

───────────────

[1]Under ORS 137.700 petitioner was sentenced to consecutive, mandatory sentences of
120 months for each of the manslaughter convictions and 70 months for the assault conviction.

3 - OPINION AND ORDER

at 2.)  Petitioner filed a successive petition for post-conviction relief in Malheur County,

challenging the length of his sentence, but it was dismissed and subsequently affirmed by the

Oregon Court of Appeals.  The Oregon Supreme Court again denied review.

Petitioner filed the current Petition for Writ of Habeas Corpus on April 28, 2005, and the

state responded to those claims  on February 9, 2006.  Petitioner asked for additional time to file

his supporting memorandum, indicating that he was currently pursuing his state post-conviction

remedy.  (Pet'r Mot. for Extension of time (#30).)  The court ordered petitioner to show cause as

to why the petition should not be dismissed for being premature.  (Order to Show Cause (#32) at

1.)  In his Response to Order to Show Cause (#33), petitioner indicated that his pending state

petition was initially denied on the basis that it was successive, which could mean that his post

conviction case was not "properly filed" and would not toll AEDPA's one year statute of

limitations.  Petitioner asserted that his confusion constituted "good cause" for filing in federal

court under Pace v. Dugliemo, 544 U.S. 408 (2005).  Accordingly, petitioner asked the court to

stay the current petition rather than dismiss it as premature.  The court determined that petitioner

had satisfied the Order to Show Cause, stayed the case pending the conclusion of petitioner's

state post-conviction case, and ordered petitioner to file status reports with the court every 60

days.  (Record of Order (#34).)  On January 8, 2007, the court lifted the stay and the current

habeas petition was taken under advisement.  (Record of Order (#36).)

Of the 16 grounds raised in petitioner's Petition for Writ of Habeas Corpus, only two have

been preserved for federal review.  Both parties agree that both of these grounds have been

properly exhausted.  (Pet. Memo. to Supp. at 7, Resp't Reply to Memo. in Supp. at 3,6.)

Petitioner argues only the following in his supporting memorandum:

4 - OPINION AND ORDER

Ground One: Trial Counsel failed to file a motion to disqualify Judge Osbourne from the case despite knowing: that she had prosecuted Petitioner for DUII before becoming a judge; that the judge was related to Petitioner's ex-wife with whom he had an acrimonious divorce; that she was predisposed against Petitioner; that Petitioner did not want her on the case and believes she was prejudiced against him.

Ground Two: Trial Counsel failed to move the court to preserve evidence of the crime, to wit: Petitioner's truck and the motorcycles, and the deceased person's blood samples for use in trial or later analysis by expert witnesses.[2]

## DISCUSSION

## I.   Standard of Review

### A.    Review under the AEDPA

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "AEDPA circumscribes a federal habeas court's review of a state-court decision." Lockyer v. Andrade, 538 U.S. 63, 70 (2003). A federal court's "independent consideration of the constitutional issue is neither relevant, nor necessary to dispose of the question presented." Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). "The only question that matters under § 2254(d)(1), . . . is whether or not the . . . state court's decision is contrary to or involved an unreasonable application of, clearly established Federal law." Id. (quoting Lockyer, 538 U.S. at 71). The state court's findings of fact are

_____

[2]  These are denominated as Grounds 6 and 9 in the Petition for Writ of Habeas Corpus. Petitioner's other claims were not briefed, and are therefore deemed waived/abandoned. Cf. Doty v. County of Lassen, 37 F.3d 540, 548 (9th Cir. 1994).

presumed correct and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 339-340 (2003).

A state court acts "contrary to" clearly established federal law if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if it decides a case differently than the Supreme Court on a set of materially indistinguishable facts. Lockyer, 538 U.S. at 73; Bell v. Cone, 535 U.S. 685, 694 (2002); Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Ramdass v. Angelone, 530 U.S. 156, 164-66 (2000). Only those Supreme Court holdings in effect at the time the state court renders its decision constitute "clearly established Federal law" under § 2254(d)(1). Lockyer, 538 U.S. at 71-72; Clark, 331 F.3d at 1069.

A state court decision is an "unreasonable application of" clearly established federal law if the court identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the prisoner's case or unreasonably refuses to extend the governing legal principle. Lockyer, 538 U.S. at 74-75; Williams, 529 U.S. at 412-13; Ramdass, 530 U.S. at 166. Under this standard of review, a federal court may not issue a writ of habeas corpus simply because it concludes in its independent judgment that the state court applied clearly established federal law erroneously or incorrectly. Lockyer, 538 U.S. at 75-76; Williams, 529 U.S. at 411. Rather, the state court decision must be "objectively unreasonable." Id. at 76 (citing Williams, 529 U.S. 409; Bell, 535 U.S. at 699).

**B.**   **Ineffective Assistance of Counsel**

In order to prevail on a claim of ineffective assistance of counsel, petitioner must show both (1) that his attorney's performance fell below an objective standard of reasonableness; and

(2) that the performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). The first part of this test requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687. While this burden is not insurmountable, there is a strong presumption that counsel's conduct falls within "the wide range of reasonable professional assistance." <u>Id</u>. at 689.

To establish the second prong of the <u>Strickland</u> test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. In determining whether a defendant was prejudiced by ineffective assistance of counsel, the court should examine whether the "'result of the proceeding was fundamentally unfair or unreliable.'" <u>United States v. Palomba</u>, 31 F.3d 1456, 1460-61 (9th Cir. 1994) (quoting <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 368 (1993)). The <u>Strickland</u> standard also applies to ineffective assistance of appellate counsel claims. <u>Evitts v. Lucy</u>, 469 U.S. 387 (1985); <u>Miller v. Keeney</u>, 882 F.2d 1428, 1433 (9th Cir. 1989).

## II.    **Application**

In both grounds at issue here, petitioner asserts that trial counsel's representation failed to satisfy the minimal levels of attorney performance under <u>Strickland</u>. (Pet'r Mem. in Supp. at 11.) Specifically, petitioner asserts that the post-conviction court's ruling against him was contrary to and involved an unreasonable application of clearly established federal law. Respondent argues that the state court decisions on counsel's ineffectiveness for both grounds are entitled to deference under § 2254(d)(1) since those decisions were neither contrary to, nor an unreasonable application of <u>Strickland</u>, nor an unreasonable determination of the facts under § 2254(d)(2)

7 - OPINION AND ORDER

based on the evidence presented to the Oregon courts.  (Resp't Reply to Memo. in Supp. of Pet.

for Writ of Habeas Corpus (#46) at 6.)

### A.    Ground One:  Ineffectiveness for not moving to disqualify the judge.

In his amended petition, petitioner claims that trial counsel should have moved to

disqualify Judge Osbourne from presiding over his trial because she was related to petitioner by

marriage.  (Pet'r Mem. in Supp. at 4.)  Petitioner's trial counsel raised this issue at petitioner's

April 2, 1996, sentencing.  In a 2001 post-conviction affidavit, trial counsel admitted that, at

some point during the trial, petitioner had told trial counsel that petitioner was related to Judge

Osbourne.  Petitioner asserts that trial counsel was obligated to have a general comprehension of

the law and should have understood that Oregon law required that he move to disqualify Judge

Osbourne earlier in the case.  Petitioner contends that such a failure by trial counsel fails to meet

minimal levels of attorney performance under Strickland.

Under ORS 14.260, a motion to disqualify is untimely if the court "has ruled upon any

petition, demurrer, or motion other than a motion to extend time in the cause, manner, or

proceeding."  The state post-conviction court found that the trial court had correctly denied trial

counsel's disqualification motion as untimely.  (Resp't Ex.125 at 3.)  The court further found that

petitioner's trial counsel was not inadequate for failing to seek disqualification during trial

because there was no basis for such a disqualification.  Specifically, the familial relationship that

petitioner complained of was one that Judge Osbourne herself was unaware of, until it was

brought to her attention at the sentencing hearing.  (Resp't Reply to Memo. in Supp. at 5.)

I find no merit in petitioner's contention that his trial counsel was ineffective for failing to

move to disqualify Judge Osbourne.  Even if counsel's performance was deficient for failing to

8 - OPINION AND ORDER

timely bring the motion, petitioner has not established prejudice, as is required under <u>Strickland</u>.

Petitioner has offered no evidence that if the motion to disqualify Judge Osbourne had been

timely, it would have been granted. In fact, the only evidence in the record is contrary to

petitioner's contention. The state trial court found that there was no basis for disqualification,

even if the motion had been timely. That decision is entitled to deference since it was not an

objectively unreasonable determination of the facts in the record. Finally, the post-conviction

court's finding that counsel was not ineffective for failing to timely make the motion is also

entitled to deference. It is not an unreasonable application of federal law as determined by the

Supreme Court in <u>Strickland v. Washington</u> because petitioner has failed to show both deficient

performance and prejudice.

### B. <u>Ground Two: Ineffectiveness for not moving to preserve the physical evidence.</u>

In his amended petition, petitioner claims that trial counsel should have moved to

preserve evidence; specifically his truck, the motorcycles, and the blood samples of the deceased

motorcyclists. (Pet'r Mem. in Supp. at 5.) Petitioner's trial counsel indicated that he believed

that the motorcycles "were gone almost immediately" and were therefore unavailable for

inspection. (Resp't Ex.122 at 3.) The record further reflects that the prosecutor told petitioner's

trial counsel that the truck would probably be held until trial. However, when the trial was

delayed, the police sold the truck to cover the cost of storing it at a wrecking lot. (Resp't Ex.121

at 40.) Petitioner's trial counsel admitted that he was "quite chagrined" to learn that the truck was

gone. (Resp't Ex.122 at 3.) Regarding the blood samples, petitioner's trial counsel did not

attempt to have them preserved or retested once he learned that they had been tested for alcohol

with negative results.  The state post-conviction court found that petitioner "had not established a basis for post-conviction relief" on this claim.  (Resp't Ex.125. at 4.)

Petitioner contends that trial counsel's failure to move to preserve the evidence discussed above violated counsel's obligation to investigate and to present experts with information relevant to their inquiry.  (Pet'r Mem. in Supp. at 10-11.)  Specifically, petitioner claims that trial counsel understood that the physical evidence of the collision was key to his defense. Accordingly, petitioner claims that counsel's failure to preserve the physical evidence for examination by a defense expert violated this obligation.  Additionally, petitioner argues that he was prejudiced by trial counsel's failure to investigate because this failure to pursue physical and forensic analysis may have encouraged the trial court to exclude evidence the defense counsel did attempt to offer in support of his theory as irrelevant and confusing under Oregon Evidence Rule 403.  Consequently, petitioner argues that the outcome of the trial would have been different because defense counsel may have been able to supplement with physical evidence the proffered testimony that one or more of the motorcycles crossed the center line.  (Pet'r Mem. in Supp. at 12.)  This would have made it more difficult for a jury to conclude that it was petitioner's driving, and not one of the motorcyclists, that "recklessly caused the death of another human being" as required under Oregon law to support a conviction for First Degree Manslaughter.  Petitioner claims that trial counsel's errors caused such prejudice as to "undermine confidence in the outcome" of the trial as required under Strickland.

However, I conclude that petitioner has not shown how trial counsel fell below an objective standard of reasonableness for failing to preserve the truck, motorcycles, or blood

samples, nor has petitioner provided anything more than mere speculation that to demonstrate how he was prejudiced by counsel's failure to preserve those items.

At the time of petitioner's trial, the prosecutor and defense counsel entered into an informal agreement to preserve the truck until trial so that it could be examined by defense counsel. (Pet'r Mem. in Supp. at 6.)  However, at the time the prosecutor entered into this agreement, the police had already released the truck to cover the cost of storing it at a wrecking lot. (Resp't Ex.122 at 3.)  Beyond asserting that he wanted the truck to show "scratches on the door, stuff like that," petitioner has not established how further examination of the truck would have helped his case. (Resp't Ex.121 at 40.)  In fact, during trial, defense's reconstruction expert put petitioner's truck over the center line, and admitted that the accident would not have occurred if the truck had been in its proper lane. (Pet'r Mem. in Supp. at 7.)  Even if there were scratches on the door, petitioner has not provided this court with any information about the importance of examining the truck before trial.  Accordingly, counsel was not deficient for failing to take extra steps to preserve the truck once it was released to cover the cost of storage.  Further, since an examination of the truck was not necessary to prove petitioner's innocence, he was not prejudiced by counsel's failure to conduct such an examination of the truck.

It is apparent from the record that the motorcycles were released by the police soon after the accident so there was no opportunity for trial counsel to move to preserve them for examination. (Resp't Ex.122 at 4.)  Defense counsel can hardly be deficient for failing to move to preserve the motorcycles when they were unavailable.  Also, petitioner has not presented this court with any information he expected to obtain from the motorcycles that would have aided his defense.

11 - OPINION AND ORDER

I further conclude that counsel was not deficient, and petitioner was not prejudiced by counsel's failure to preserve the victims' blood samples. The samples were tested by the medical examiner and no evidence of alcohol was found. (Resp't Ex.121 at 4.) Even if the samples tested positive for alcohol, contributory negligence is not a defense to criminally reckless behavior in Oregon. State v. Simmons, 34 Or. App. 929, 934 (1978), *rev denied* 284 Or. 341 (1978). Therefore, there was no reason for trial counsel to preserve the blood samples for retesting because regardless of the outcome of it would be of no help to defendant's case.

Finally, petitioner's arguments that he was prejudiced by trial counsel's failure to preserve the truck, motorcycles, or blood evidence is based solely upon speculation. In Strickland v. Washington the Supreme Court clearly established the principle that in order to demonstrate prejudice, the petitioner must show that the result of the proceeding would have been different had counsel's performance not been deficient. 466 U.S. at 694. Mere speculation about what an expert would testify to and further speculation that such testimony may have changed the outcome hardly establishes the requisite prejudice. Therefore, the state post-conviction court's finding that counsel was not ineffective for failing to preserve the truck, motorcycles, or blood samples, is entitled to deference because it is not an unreasonable application of federal law as determined by the Supreme Court in Strickland v. Washington, since given the facts in the record, petitioner has failed to show both deficient performance and prejudice.

/ / /

/ / /

/ / /

/ / /

12 - OPINION AND ORDER

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#3) is DENIED, and this proceeding is DISMISSED WITH PREJUDICE.

DATED this 20th day of August, 2007.

ROBERT E. JONES
U.S. District Judge

13 - OPINION AND ORDER